IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

**OYO HOTELS, INC.**
    **Plaintiff,**

v.                    CIVIL ACTION NO. _____

**SONNY PARMAR;**
**MAHESH ENTERPRISES LLC;**
**VISHNU, INC.; JAGADISH, INC.;**
**SHIVAJI INVESTMENT LLC; and**
**PREM CRESWELL LLC**

    **Defendants.**

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff OYO Hotels, Inc. files this Original Complaint against Defendants Sonny Parmar; Mahesh Enterprises LLC d/b/a Red Lion Inn & Suites; Vishnu, Inc. d/b/a Red Lion Inn & Suites Glendive; Jagadish, Inc.; Shivaji Investment LLC; and Prem Creswell LLC (collectively "Defendants"), and would show the Court as follows:

## PARTIES

1. Plaintiff OYO Hotels, Inc., (hereinafter "Plaintiff" or "OYO") is a Delaware Corporation with its principal place of business in Dallas, Texas. Accordingly, Plaintiff is a citizen of the states of Delaware and Texas.

2. Defendant Sonny Parmar (hereinafter "Mr. Parmar") is an individual resident of and is domiciled in Camas, Clark County, Washington, who may be served at his dwelling place at 2353 N.W. 29th Ave., Camas, Washington, 98607.

3.      Defendant Mahesh Enterprises LLC d/b/a Red Lion Inn & Suites (hereinafter "Mahesh") is a Washington limited liability company with its principal place of business in Spokane, Washington. Upon information and belief, Defendant Mahesh's sole member is Sonny Parmar, who is a resident of and is domiciled in the state of Washington. Thus, Defendant Mahesh is a citizen of Washington and no other state. Defendant Mahesh may be served by and through its registered agent, Sonny Parmar, at 2353 N.W. 29th Ave., Camas, Washington, 98607.

4.      Defendant Vishnu, Inc. d/b/a Red Lion Inn & Suites Glendive (hereinafter "Vishnu") is a Montana corporation with its principal place of business in Glendive, Montana. Thus, Defendant Vishnu is a citizen of the state of Montana. Defendant Vishnu may be served by and through its registered agent, Registered Agents Inc., at 1001 S. Main Street, Suite 500, Kalispell, Montana, 59901.

5.      Defendant Jagadish, Inc. (hereinafter "Jagadish") is an Oregon corporation with its principal place of business in Medford, Oregon. Thus, Defendant Jagadish is a citizen of the state of Oregon. Defendant Jagadish may be served by and through the Oregon Secretary of State, at Corporation Division – Process Service, 255 Capitol Street NE, Suite 151, Salem, Oregon, 97310.

6.      Defendant Shivaji Investment LLC (hereinafter "Shivaji") is a Washington limited liability company with its principal place of business in Centralia, Washington. Upon information and belief, Defendant Shivaji's sole member is Sonny Parmar, who is a resident of and is domiciled in the state of Washington. Thus, Defendant Shivaji is a citizen of Washington and no other state. Defendant Shivaji may be served by and through its registered agent, Sonny Parmar, at 702 Harrison Ave., Centralia, Washinton, 98531.

7.      Defendant Prem Creswell LLC (hereinafter "Prem Creswell") is an Oregon limited liability company with its principal place of business in Creswell, Oregon. Upon information and

belief, Prem Creswell's sole member is Sonny Parmar, who is a resident of and is domiciled in Washington. Thus, Defendant Prem Creswell is a citizen of Washington and no other state. Defendant Prem Creswell may be served by and through its registered agent, Sonny Parmar, at 345 E. Oregon Ave., Creswell, Oregon, 97426.

## JURISDICTION

8. This Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants are citizens of different U.S. States, and the amount in controversy exceeds $75,000.00, excluding interests and costs. Plaintiff is a citizen of the states of Delaware and Texas. Defendant Sonny Parmar is a citizen of the state of Washington. Defendant Mahesh is a citizen of the state of Washington. Defendant Vishnu is a citizen of the state of Montana. Defendant Jagadish is a citizen of the state of Oregon. Defendant Shivaji is a citizen of the state of Washington. Defendant Prem Creswell is a citizen of the state of Washington.

9. This Court has personal jurisdiction over all Defendants. This is a contract dispute between Plaintiff and Defendants Sonny Parmar, Mahesh, Vishnu, Jagadish, Shivaji, and Prem Creswell. Defendants' agreements with Plaintiff state that "each hereby irrevocably and unconditionally consents to the exclusive jurisdiction of the United States District Court for the Northern District of Texas for the purpose of bringing any litigation, actions, or proceedings in any manner relating or arising out of this Agreement or any of the Loan Agreements. . . ." Accordingly, Defendants Sonny Parmar, Mahesh, Vishnu, Jagadish, Shivaji, and Prem Creswell have consented and submitted to the personal jurisdiction of this Court.

10. Personal jurisdiction over Defendants Sonny Parmar, Mahesh, Vishnu, Jagadish, Shivaji, and Prem Creswell comports with due process and is authorized by the Texas Long Arm statute. These Defendants have minimum contacts with the State of Texas, and each Defendant's

contact with the State of Texas arises from, or is directly related to, Plaintiff's cause of action for breach of contract. Further, this Court's exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice.

## VENUE

11. Venue is proper in this district and division in accordance with the parties' valid and enforceable forum selection clause.  Defendants' agreement with Plaintiff states that "each hereby waives any objection they may now have or hereafter have to the laying of venue in the United States District Court for the Northern District of Texas and irrevocably waives, to the fullest extent permitted by applicable law, the defense of *forum non conveniens* to the maintenance of such action or proceeding in any such court."

12. Alternatively, venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## FACTUAL BACKGROUND

13. Upon information and belief, Defendant Sonny Parmar owns in whole or in part Defendants Mahesh, Vishnu, Jagadish, Shivaji, and Prem Creswell (collectively the "Hotel Entities").

### The Marketing, Consulting and Revenue Management Agreements

14. On June 6, 2019, OYO and Shivaji, by and through Mr. Parmar, entered into a Marketing, Consulting and Revenue Management Agreement related to a hotel property located at 702 Harrison Ave., Centralia, Washington, 98531 and allegedly owned and operated by Shivaji (hereinafter "Shivaji Agreement"). Portions of the Shivaji Agreement were amended on December 1, 2019.

15. On June 25, 2019, OYO and Jagadish, by and through Mr. Parmar, entered into a Marketing, Consulting and Revenue Management Agreement related to a hotel property located at 518 Riverside Ave., Medford, Oregon, 97501 and allegedly owned and operated by Jagadish and (hereinafter "Jagadish Agreement"). Portions of the Jagadish Agreement were amended on December 1, 2019.

16. On August 18, 2019, OYO and Mahesh, by and through Mr. Parmar, entered into a Marketing, Consulting and Revenue Management Agreement related to a hotel property located at 7111 N. Division St., Spokane, Washington, 99208 and allegedly owned and operated by Mahesh and (hereinafter "Mahesh Agreement"). Portions of the Mahesh Agreement were subsequently amended on December 1, 2019.

17. On August 22, 2019, OYO and Vishnu, by and through Mr. Parmar, entered into a Marketing, Consulting and Revenue Management Agreement related to a hotel property located at 2000 N. Merrill Ave., Glendive, Montana, 59330 and allegedly owned and operated by Vishnu and (hereinafter "Vishnu Agreement"). Portions of the Vishnu Agreement were amended on December 1, 2019.

18. On September 13, 2019, OYO and Prem Creswell, by and through Mr. Parmar, entered into a Marketing, Consulting and Revenue Management Agreement related to a hotel property located at 345 E. Oregon, Ave., Creswell, Oklahoma, 97426 and allegedly owned and operated by Prem Creswell (hereinafter "Prem Creswell Agreement"). Portions of the Prem Creswell Agreement were amended on September 16, 2019.

19. Under the Shivaji, Jagadish, Mahesh, Vishnu, and Prem Creswell Agreements (collectively the "Marketing, Consulting and Revenue Management Agreements" or "Agreements"), OYO would provide the "Facility Owner" (here, each Hotel Entity) with an up-

front capital contribution (the "Capital Improvement Investment") to make required property improvements along with revenue management, marketing, and online booking services.

20. In return, each Hotel Entity agreed, among other terms, that it would timely complete the required property improvement work, which was listed in an exhibit of the Agreement, within forty-five (45) days of the Effective Date of each Agreement; that OYO had the exclusive right to set room rates; that all rooms at each hotel property would be available on the OYO platform; that all reservations and bookings would go through the OYO platform; and that all revenue for each property would be recorded through the OYO OS system.

21. The Marketing, Consulting and Revenue Management Agreements also provided that either party may terminate the Agreement without cause by giving the other party thirty (30) days' notice. Specifically, the Agreements provided that "In the event such termination is made during the Initial Term by the Facility Owner [here, each Hotel Entity] or by OYO in case of breach of this Agreement by the Facility Owner, the Facility Owner shall pay OYO an amount that is equal to 1.5 times the unamortized portion of the Capital Improvement Investment (the 'Termination Fee')."

22. In sum, the Marketing, Consulting and Revenue Management Agreements provided that the hotel properties owned and operated by each Hotel Entity would, among other things, operate as an OYO branded hotel, that OYO would set prices and manage online reservations, that the Hotel Entities would run the properties' on-site operations, and that OYO would be entitled to certain commissions as set forth in the Agreements.

23. Upon commencement of the Effective Date for each Marketing, Consulting and Revenue Management Agreement, OYO began performance of its obligations under the

Agreements by providing each Hotel Entity with Capital Improvement Investments and management, consulting, and marketing services.

24. On November 25, 2019, OYO mailed written correspondence to Vishnu, in care of Mr. Parmar, stating that the property transformation work required by the Vishnu Agreement remained incomplete. Despite the deadline having expired, OYO provided Vishnu with an additional thirty (30) days to complete any outstanding work and to notify OYO once the work was completed or to contact OYO to seek an extension. OYO advised Vishnu that if the building transformation work remained incomplete, OYO would exercise, in its discretion, all remedies granted to it under the terms of the Vishnu Agreement.

25. Likewise, OYO mailed similar written correspondence to Mahesh, in care of Mr. Parmar, on January 27, 2020, and to Jagadish, in care of Mr. Parmar, on January 28, 2020, informing them that each property's transformation work remained incomplete and providing them with an additional thirty (30) days to complete such work. Additionally, OYO advised them that if the transformation work remained incomplete, OYO would exercise, in its discretion, all remedies granted to it under the terms of the Mahesh and Jagadish Agreements.

26. Vishnu, Mahesh, and Jagadish failed to complete the transformation work for the properties, as required by each respective Agreement, within the additional thirty (30) days. They also failed to request an extension to complete such work for the properties.

27. On May 4, 2020, OYO terminated the Prem Creswell Agreement with cause. Since the time of termination, Prem Creswell has been in default of its post-termination obligation to pay the outstanding Termination Fee of approximately $148,654.00, including accrued interest, due to OYO pursuant to the Prem Creswell Agreement.

28. On October 15, 2021, OYO terminated the Mahesh Agreement with cause and notified Mahesh that it was required to pay the Termination Fee pursuant to the terms of the Mahesh Agreement. Since the time of termination, Mahesh has been in default of its post-termination obligation to pay the outstanding Termination Fee of approximately $281,420.00, including accrued interest, outstanding business recovery, and attorneys' fees and expenses, due to OYO pursuant to the Mahesh Agreement.

29. On October 15, 2021, OYO also terminated the Jagadish Agreement with cause and notified Jagadish that it was required to pay the Termination Fee pursuant to the terms of the Jagadish Agreement. Since the time of termination, Jagadish has been in default of its post-termination obligation to pay the outstanding Termination Fee of approximately $334,867.00, including accrued interest, outstanding business recovery, and attorneys' fees and expenses, due to OYO pursuant to the Jagadish Agreement.

30. On April 21, 2022, OYO terminated the Vishnu Agreement with cause and notified Vishnu that it was required to pay the Termination Fee pursuant to the terms of the Vishnu Agreement. Since the time of termination, Vishnu has been in default of its post-termination obligation to pay the outstanding Termination Fee of approximately $131,554.00, including accrued interest, outstanding business recovery, and attorneys' fees and expenses, due to OYO pursuant to the Vishnu Agreement.

31. Additionally, Shivaji currently owes outstanding business recovery of approximately $84,422.00, including accrued interest, due to OYO under the Shivaji Agreement.

32. To date, the Hotel Entities have not paid the Termination Fees and/or outstanding business recovery amounts due to OYO under the respective Marketing, Consulting and Revenue Management Agreements.

**Secured Promissory Note, Guaranty, and Pledge Agreement**

33.     On January 26, 2020, OYO and Mr. Parmar entered into a Secured Promissory Note, Guaranty, and Pledge Agreement (collectively the "Loan Documents"). Under the terms of the Secured Promissory Note, OYO made a consolidated loan to Mr. Parmar in the combined original principal amount of $337,000.00. In return, Mr. Parmar agreed to repay the loan made by OYO in monthly installments commencing on February 1, 2020, and further agreed to fully repay the loan on or before December 31, 2021.

34.     As a condition precedent to the loan made by OYO under the Secured Promissory Note, Mr. Parmar executed a Guaranty on January 26, 2020. Under the terms of the Guaranty, Mr. Parmar unconditionally guaranteed as a primary obligor, and not merely as surety, all obligations and liabilities of each Hotel Entity under their respective Marketing, Consulting and Revenue Management Agreements. Further, under the terms of the Guaranty, Mr. Parmar agreed to pay all costs, fees, and expenses incurred by OYO in any way related to the enforcement or protection of OYO's rights under those Marketing, Consulting and Revenue Management Agreements.

35.     As security for the debt owed and obligations due to OYO under the Secured Promissory Note, Mr. Parmar executed a Pledge Agreement on January 26, 2020. Under the terms of the Pledge Agreement, Mr. Parmar pledged certain collateral, which included the issued and outstanding capital stock, equity securities, membership units and ownership issues of certain Hotel Entities owned, held of record, or beneficially by Mr. Parmar at the date of the Pledge Agreement; all other capital stock, equity securities, membership units and ownerships interests of certain Hotel Entities owned, held of record, or beneficially by Mr. Parmar at any time; and any and all replacements, products and proceeds of, and dividends, distributions of property or securities, returns of capital or other distributions made on or with respect to any of the foregoing.

36. Subsequently, Mr. Parmar did not repay the loan made by OYO in monthly installments commencing on February 1, 2020, and further did not fully repay the loan on or before December 31, 2021, pursuant to the terms of the Loan Documents.

### Forbearance Agreement

37. On December 29, 2021, Mr. Parmar and the Hotel Entities entered into a Forbearance Agreement with OYO related to Mr. Parmar's failure to pay amounts owed under the Loan Documents and the Hotel Entities' failures to pay amounts owed under the respective Marketing, Consulting and Revenue Management Agreements.

38. Pursuant to the Forbearance Agreement, OYO agreed to forebear exercising its rights under the Loan Documents with respect to the existing defaults until the earlier of either the date of final payment of amounts owed under the Forbearance Agreement, or the date in which any forbearance default occurs, as defined by the terms of the Forbearance Agreement. OYO also agreed to assist Mr. Parmar to obtain additional financing through the Small Business Administration ("SBA") federal lending program by executing an SBA Form 2462 Addendum. In return, Mr. Parmar and/or the Hotel Entities agreed to make the following payments: a single payment of $400,000.00 immediately payable to OYO upon funding of an SBA loan to Mr. Parmar and/or any Hotel Entity; and monthly payments of $5,000.00 commencing on February 2, 2022, and continuing until the obligations owed under the Secured Promissory Note and the obligations owed under the Guaranty were paid in full.

39. Upon execution of the Forbearance Agreement on December 29, 2021, OYO completed and delivered the SBA Form 2462 Addendums to Mr. Parmar related to the Vishnu and Shivaji hotel properties.

40. To date, Mr. Parmar and the Hotel Entities have not paid any of the monthly payments of $5,000.00 due to OYO commencing on February 2, 2022. OYO sent Mr. Parmar and the Hotel Entities written correspondence via United Parcel Service and electronic mail once a month from February 2022 to August 2022, notifying each of their requirement to make the monthly payments and their default in failing to pay the monthly installments per the terms of the Forbearance Agreement. However, neither Mr. Parmar nor the Hotel Entities have responded to any correspondence sent by OYO to date.

41. At this time, the aggregate amount past due and owed to OYO under the Forbearance Agreement is approximately $1,457,495.00, including amounts owed under the Loan Documents, the respective Marketing, Consulting and Revenue Management Agreements, accrued interest, and attorneys' fees and expenses.

42. On June 2, 2023, Counsel for OYO sent Mr. Parmar and the Hotel Entities written correspondence via certified mail and electronic mail, notifying each of the outstanding amount owed to OYO under the Forbearance Agreement and Loan Documents, including accrued interest and attorneys' fees and expenses. This written correspondence further notified Mr. Parmar and the Hotel Entities of the obligations due under the Forbearance Agreement and Loan Documents, the failure to fulfil such obligations by Mr. Parmar and the Hotel Entities, and notice of OYO's intent to commence suit if the amounts owed were not paid within thirty (30) days of receipt of the notice letter.

43. On June 2, 2023, Counsel for OYO also sent Mahesh, Vishnu, and Jagadish each written correspondence via certified mail and electronic mail, notifying each of the outstanding amounts owed under the respective Marketing, Consulting and Revenue Management Agreements. Each written correspondences additionally notified the pertinent party of their obligations due

under the respective Marketing, Consulting and Revenue Management Agreements, the failure to fulfil such obligations by Mahesh, Vishnu, and Jagadish, and notice of OYO's intent to commence suit if the amounts owed were not paid within thirty (30) days of receipt of the notice letters.

44. To date, neither Mr. Parmar nor the Hotel Entities have responded to correspondences sent by OYO's Counsel on June 2, 2023.

## CAUSES OF ACTION

### COUNT ONE – BREACH OF MARKETING, CONSULTING AND REVENUE MANAGEMENT AGREEMENTS

**A. Breach of Jagadish Agreement**

45. OYO incorporates by reference herein the factual allegations and matters set forth in the preceding paragraphs.

46. On August June 25, 2019, Plaintiff OYO and Defendant Jagadish, by and through Mr. Parmar, entered into a valid, enforceable, and binding Marketing, Consulting, and Revenue Management Agreement.

47. Under the Jagadish Agreement, OYO provided Jagadish with a Capital Improvement Investment loan to make required property improvements to its hotel property. In return, Jagadish agreed it would timely complete the required property improvement work, and OYO would then provide revenue management, marketing, and online booking services for the hotel property.

48. OYO performed all its obligations under the Jagadish Agreement by a providing Capital Improvement Investment loan and management, consulting, and marketing services to Jagadish.

49. Jagadish materially and substantially breached the Jagadish Agreement because it has failed to pay OYO the benefits to which OYO is entitled, including, but not limited to, the outstanding Termination Fee, under the Jagadish Agreement.

50. Jagadish's breach of the Jagadish Agreement has proximately caused injury to OYO.

**B. Breach of Mahesh Agreement**

51. OYO incorporates by reference herein the factual allegations and matters set forth in the preceding paragraphs.

52. On August 18, 2019, Plaintiff OYO and Defendant Mahesh, by and through Mr. Parmar, entered into a valid, enforceable, and binding Marketing, Consulting, and Revenue Management Agreement.

53. Under the Mahesh Agreement, OYO provided Mahesh with a Capital Improvement Investment loan to make the required property improvements to its hotel property. In return, Mahesh agreed it would timely complete the required property improvement work, and OYO would then provide revenue management, marketing, and online booking services for the hotel property.

54. OYO performed all its obligations under the Mahesh Agreement by providing a Capital Improvement Investment loan and management, consulting, and marketing services to Mahesh.

55. Mahesh materially and substantially breached the Mahesh Agreement because it has failed to pay OYO the benefits to which OYO is entitled, including, but not limited to, the outstanding Termination Fee, under the Mahesh Agreement.

56. Mahesh's breach of the Mahesh Agreement has proximately caused injury to OYO.

### C. Breach of Vishnu Agreement

57. OYO incorporates by reference herein the factual allegations and matters set forth in the preceding paragraphs.

58. On August 22, 2019, Plaintiff OYO and Defendant Vishnu, by and through Mr. Parmar, entered into a valid, enforceable, and binding Marketing, Consulting, and Revenue Management Agreement.

59. Under the Vishnu Agreement, OYO provided Vishnu with a Capital Improvement Investment loan to make the required property improvements to its hotel property. In return, Vishnu agreed it would timely complete the required property improvement work, and OYO would then provide revenue management, marketing, and online booking services for the hotel property.

60. OYO performed all its obligations under the Vishnu Agreement by providing a Capital Improvement Investment loan and management, consulting, and marketing services to Vishnu.

61. Vishnu materially and substantially breached the Vishnu Agreement because it has failed to pay OYO the benefits to which OYO is entitled, including, but not limited to, the outstanding Termination Fee, under the Vishnu Agreement.

62. Vishnu's breach of the Vishnu Agreement has proximately caused injury to OYO.

### D. Breach of Prem Creswell Agreement

63. OYO incorporates by reference herein the factual allegations and matters set forth in the preceding paragraphs.

64. On September 13, 2019, Plaintiff OYO and Defendant Prem Creswell, by and through Mr. Parmar, entered into a valid, enforceable, and binding Marketing, Consulting, and Revenue Management Agreement.

65. Under the Prem Creswell Agreement, OYO provided Prem Creswell with a Capital Improvement Investment loan to make required property improvements to its hotel property. In return, Prem Creswell agreed it would timely complete the required property improvement work, and OYO would then provide revenue management, marketing, and online booking services for the hotel property.

66. OYO performed all its obligations under the Prem Creswell Agreement by providing a Capital Improvement Investment loan and management, consulting, and marketing services to Prem Creswell.

67. Prem Creswell materially and substantially breached the Prem Creswell Agreement because it has failed to pay OYO the benefits to which OYO is entitled, including, but not limited to, the outstanding Termination Fee, under the Prem Creswell Agreement.

68. Prem Creswell's breach of the Prem Creswell Agreement has proximately caused injury to OYO.

**E. Breach of Shivaji Agreement**

69. OYO incorporates by reference herein the factual allegations and matters set forth in the preceding paragraphs.

70. On June 6, 2019, Plaintiff OYO and Defendant Shivaji, by and through Mr. Parmar, entered into a valid, enforceable, and binding Marketing, Consulting, and Revenue Management Agreement.

71. Under the Shivaji Agreement, OYO provided Shivaji with a Capital Improvement Investment loan to make required property improvements to its hotel property, and provided revenue management, marketing, and online booking services for the hotel property. In return, Shivaji agreed it would timely complete the required property improvement work and facilitate

15

and oversee the hotel property's on-site operations, and OYO would be entitled to certain commissions as set forth in the Shivaji Agreement.

72. OYO performed all its obligations under the Shivaji Agreement by providing a Capital Improvement Investment loan and management, consulting, and marketing services to Shivaji.

73. Shivaji materially and substantially breached the Shivaji Agreement because it has failed to pay OYO the benefits to which OYO is entitled, including, but not limited to, the outstanding business recovery, under the Shivaji Agreement.

74. Shivaji's breach of the Shivaji Agreement has proximately caused injury to OYO.

**COUNT TWO – BREACH OF THE SECURED PROMISSORY NOTE, GUARANTY, AND PLEDGE AGREEMENT (COLLECTIVELY THE "LOAN DOCUMENTS")**

75. OYO incorporates by reference herein the factual allegations and matters set forth in the preceding paragraphs.

76. On January 26, 2020, Plaintiff OYO and Defendant Sonny Parmar, entered into a valid, binding, and enforceable Secured Promissory Note, Guaranty, and Pledge Agreement (collectively the "Loan Documents").

77. Under the terms of the Secured Promissory Note, OYO loaned Mr. Parmar an original principal amount of $337,000.00. In return, Mr. Parmar agreed to repay the loan made by OYO in monthly installments commencing on February 1, 2020, and further agreed to fully repay the loan on or before December 31, 2021.

78. Under the terms of the Guaranty, Mr. Parmar unconditionally guaranteed as a primary obligor, and not merely as surety, all obligations and liabilities of each Hotel Entity under their respective Marketing, Consulting and Revenue Management Agreements in question, agreed

to pay all costs, fees, and expenses incurred by OYO related to the enforcement or protection of OYO's rights under those Agreements.

79. Under the terms of the Pledge Agreement, Mr. Parmar pledged certain collateral as security for his obligations under the Secured Promissory Note. The pledged collateral included the issued and outstanding capital stock, equity securities, membership units and ownership issues of certain Hotel Entities owned, held of record, or beneficially by Mr. Parmar at the date of the Pledge Agreement; all other capital stock, equity securities, membership units and ownerships interests of certain Hotel Entities owned, held of record, or beneficially by Mr. Parmar at any time; and any and all replacements, products and proceeds of, and dividends, distributions of property or securities, returns of capital or other distributions made on or with respect to any of the foregoing.

80. OYO performed all its obligations owed under the Loan Documents by loaning Mr. Parmar an original principal amount of $337,000.00.

81. Mr. Parmar has materially and substantially breached the terms of the Secured Promissory Note by failing to make monthly payments to repay the full amount of the loan, including interest, before its maturity date, and by failing to keep the collateral in good order and repair.

82. Mr. Parmar has materially and substantially breached the terms of the Guaranty by failing to comply with the monetary obligations owed to OYO under the Marketing, Consulting and Revenue Management Agreements in question.

83. Mr. Parmar has materially and substantially breached the terms of the Pledge Agreement by failing to comply with the aforementioned obligations owed to OYO under the Secured Promissory Note and Guaranty.

84. Mr. Parmar's breach of the Loan Documents has proximately caused injury to OYO.

### COUNT THREE – BREACH OF THE FORBEARANCE AGREEMENT

85. OYO incorporates by reference herein the factual allegations and matters set forth in the preceding paragraphs.

86. On or about December 29, 2021, Plaintiff OYO and Defendants Sonny Parmar, Mahesh, Jagadish, Vishnu, Shivaji, and Prem Creswell entered into a valid, binding, and enforceable Forbearance Agreement.

87. Under the terms of the Forbearance Agreement, OYO agreed to forebear from exercising its rights under the Loan Documents with respect to the existing defaults until the earlier of either the date of final payment of amounts owed as set forth in the Forbearance Agreement, or the date in which any forbearance default occurs as defined by the terms of the Forbearance Agreement. OYO also agreed to assist Mr. Parmar in his efforts to obtain additional financing through the SBA federal lending program by executing an SBA Form 2462 Addendum. In return, Mr. Parmar and/or the Hotel Entities agreed to make the following payments: a single payment of $400,000.00 immediately payable to OYO upon funding of an SBA loan to Mr. Parmar and/or any Hotel Entity; and monthly payments of $5,000.00 commencing on February 2, 2022, and continuing until the obligations owed under the Secured Promissory Note and the obligations owed under the Guaranty were paid in full.

88. OYO performed all its obligations under the Forbearance Agreement by executing and delivering the SBA Form 2462 Addendums to Mr. Parmar once the Forbearance Agreement was executed, and by forbearing from exercising its rights under the Loan Documents until the event of default as defined by the Forbearance Agreement.

89. Mr. Parmar and the Hotel Entities materially and substantially breached the Forbearance Agreement by failing to comply with the terms, conditions, and covenants of the Forbearance Agreement, including, but not limited to, failure to make monthly payments of $5,000.000 due to OYO, commencing on February 2, 2022, and failure to pay amounts due to OYO under the terms of the Loan Documents.

90. Mr. Parmar and the Hotel Entities' breach of the Forbearance Agreement has proximately caused injury to OYO.

## DAMAGES

91. OYO incorporates by reference herein the factual allegations and matters set forth in the preceding paragraphs.

92. As a direct and proximate result of Defendants Sonny Parmar, Mahesh, Jagadish, Vishnu, Shivaji, and Prem Creswell's breach of the respective Marketing, Consulting and Revenue Management Agreements, Loan Documents, and Forbearance Agreement, Plaintiff OYO has suffered the following damages:

   a. Economic or compensatory damages, including but not limited to, general damages, which flow directly from and are the natural and probable consequences of Defendants' breaches, and special damages, which were foreseeable and were caused in fact by Defendants' breaches and were within the contemplation of the parties before or at the time the Agreements in question were executed;
   b. Consequential and incidental damages;
   c. Time lost, including the time to repair or replace property damages (*i.e.*, loss of use);
   d. Costs of suit, including but not limited to any court costs associated with filing and/or prosecuting this action;
   e. Reimbursement for past, present, and future loss of profits;
   f. Compensation for loss of reputation;
   g. Liquidated damages under the liquidated damages clause in each respective Marketing, Consulting and Revenue Management Agreement, in which the parties agreed when they executed the Agreements that the harm caused by any breach would be difficult to estimate and that the amount of liquidated damages would be a reasonable estimate of just compensation;

    g.    Attorneys' fees and expenses under the Texas Civil Practice and Remedies Code Chapter 38, Section 15.12 of the Forbearance Agreement, Section 7.1 of the Secured Promissory Note, Section 1 of the Guaranty, and Section 6.10 of the Pledge Agreement;

    h.    Pre-judgment and post-judgment interest; and

    i.    All other relief, in law and in equity, to which OYO may be entitled.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff OYO Hotels, Inc. respectfully request that Defendants Sonny Parmar, Mahesh Enterprises LLC, Vishnu, Inc., Jagadish, Inc., Shivaji Investment LLC, and Prem Creswell LLC be cited to appear and answer, and that upon a final hearing of this matter, the Court enter judgment in favor of Plaintiff against Defendants, and be awarded the following:

1. all damages described above to the extent permitted by law;
2. reasonable attorneys' fees and court costs, at all levels of the legal process;
3. pre-judgment and post-judgment interest to the extent permitted by law;
4. any and all recoverable or taxable costs to the extent permitted by law;
5. all other relief, both general and special, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted, this the 18th day of July, 2023.

**OYO HOTELS INC.,**

/s/ *Jennifer M. Studebaker*
Jennifer M. Studebaker
Texas Bar No. 24099478
**FORMAN WATKINS & KRUTZ LLP**
210 East Capitol Street, Suite 2200
Jackson, Mississippi 39201
Tel:    (601) 960-8600
Fax:    (601) 960-8613

*Attorney for OYO Hotels Inc.*