UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OYO HOTELS, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23-CV-1602-B |
| | § | |
| SONNY PARMAR; MAHESH | § | |
| ENTERPRISES LLC; VISHNU, INC.; | § | |
| JAGADISH, INC.; SHIVAJI | § | |
| INVESTMENT LLC; and PREM | § | |
| CRESWELL LLC, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff OYO Hotels, Inc. ("Oyo")'s Motion for Default Judgment (Doc. 35). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

## I.

## BACKGROUND

OYO asserts causes of action against six defendants. *See* Doc. 1, Compl., ¶¶ 2–7. Five defendants are hotel entities: (1) Mahesh Enterprises LLC d/b/a Red Lion Inn & Suites ("Mahesh"); (2) Vishnu, Inc. d/b/a Red Lion Inn & Suites Glendive ("Vishnu"); (3) Jagadish, Inc. ("Jagadish"); (4) Shivaji Investment LLC ("Shivaji"); (5) Prem Creswell LLC ("Prem Creswell") (collectively, "Hotel Defendants"). *Id*. ¶¶ 3–7. The sixth defendant is Sonny Parmar, who appears to have an ownership interest in each of the Hotel Defendants. *Id*. ¶ 2; *see* Doc. 37, App'x, 140.

OYO essentially brings thirteen breach of contract claims in this case. First, it claims that each of the five Hotel Defendants entered into, and subsequently breached, a Marketing, Consulting, and Revenue Management Agreement ("Marketing Agreement"). *See* Doc. 1, Compl., ¶¶ 45–74. OYO next alleges that it entered into two separate contracts with Parmar ("Loan Agreements"). *See id.* ¶¶ 75–84. Specifically, OYO alleges that it loaned Parmar money in exchange for a secured promissory note and a guaranty of the Hotel Defendants' obligations under their respective Marketing Agreements. *Id.* OYO claims that Parmar breached both the secured promissory note by failing to repay the loan and the guaranty by failing to make payments in satisfaction of the Hotel Defendants' obligations under their respective Marketing Agreements. *Id.* ¶ 81. Finally, OYO claims that all six defendants entered into, and breached, a single Forbearance Agreement with OYO. *Id.* ¶ 86. Under that Forbearance Agreement, OYO agreed to help Parmar obtain a federal loan and to forebear enforcement of its rights against Parmar under the Loan Agreements. *Id.* ¶¶ 87, 89. In exchange, Paramar and the Hotel Defendants agreed to pay $5,000 a month to OYO in satisfaction of Parmar's debt under the Loan Agreements and to make a one-time payment to OYO of $400,000 upon funding of the federal loan; however, neither Parmar nor the Hotel Defendants apparently made the required payments to OYO. *See id.*

OYO filed its Complaint (Doc. 1) on July 18, 2023, and submitted proof of service as to each defendant by October 16, 2023. *See* Docs. 15–18, 23, 32, Affs. of Service. No defendant answered, and OYO subsequently moved for default judgment on November 3, 2023. *See* Doc. 35, Mot. The Court considers the Motion below.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth the requirements for obtaining a default judgment. A plaintiff may only seek a default judgment after he obtains an entry of default by the clerk of court. FED. R. CIV. P. 55. The entry of default occurs when the plaintiff demonstrates by affidavit or otherwise that the defendant is in default, which means the defendant "has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules." *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996); FED. R. CIV. P. 55. However, an entry of default does not automatically entitle a plaintiff to judgment. Instead, a plaintiff must apply for judgment based on the defendant's default—this is the motion for default judgment. *New York Life Ins. Co.*, 84 F.3d at 141.

District courts are afforded discretion in determining whether to enter a default judgment. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). That said, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (internal footnote omitted). Accordingly, courts must carefully review the pleadings to ensure that a plaintiff is entitled to a default judgment. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). To that end, courts employ a three-part analysis to determine whether to grant a motion for default judgment, which assesses: "(1) whether the entry of default is procedurally warranted, (2) the substantive merits of the plaintiff's claims and whether there is a sufficient basis in the pleadings for the judgment, and (3) what form of relief, if any, a plaintiff should receive." *Griffin v. O'Brien, Wexler, & Assocs., LLC,* No. 4:22-CV-0970, 2023 WL 4303649, at *2 (E.D. Tex. June 30, 2023). In determining whether the entry of default is procedurally

warranted the Court is guided by the following factors in making this determination: (1) whether material issues of fact exist, (2) whether there has been substantial prejudice, (3) whether the grounds for default are clearly established, (4) whether the default was caused by a good faith mistake or excusable neglect, (5) the harshness of a default judgment, and (6) whether the court would think itself obliged to set aside the default on the defendant's motion. *Lindsey*, 161 F.3d at 893. In determining whether there is a sufficient basis in the pleadings for the judgment, the Court assumes that due to its default, the defendant admits all well-pleaded facts in the plaintiff's complaint. *See Nishimatsu*, 515 F.2d at 1206. However, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.* Finally, if default judgment is procedurally warranted and there is a sufficient basis for judgment in the pleadings, the Court determines what form of relief, if any, the plaintiffs should receive. *Ins. Co. of the W. v. H&G Contractors, Inc.*, 2011 WL 4738197, at *4 (S.D. Tex. Oct. 5, 2011) ("A defendant's default concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages."). Normally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310–11 (5th Cir. 1993).

## III.

## ANALYSIS

OYO asserts two claims for breach of contract against each of the five Hotel Defendants and three breach of contract claims against Parmar. The Court considers whether OYO is entitled to default judgment as to each defendant below.

A.    *Whether Entry of Default is Procedurally Warranted & Whether There is a Sufficient Basis for Judgment in the Pleadings*

1.    Jagadish

OYO asserts two claims against Jagadish and moves for default judgment on both. Doc. 1 Compl., ¶¶ 45–50, 85–90; Doc. 36, Mot. Br., 12–15. The first is for breach of the Marketing Agreement, Doc. 1 Compl., ¶¶ 45–50, and the second is for breach of the Forbearance Agreement, *id*. ¶¶ 85–90. The Court declines to enter default judgment against Jagadish on either claim because OYO has not shown that Jagadish has been served in accordance with Federal Rule of Civil Procedure 4. *See Lindsey*, 161 F.3d at 893 (explaining that courts must consider "whether [the] grounds for default are clearly established" and "whether the court would think itself obliged to set aside the default on the defendant's motion" in determining whether default judgment is warranted).

Federal Rule of Civil Procedure 4(h) provides that a domestic corporation, such as Jagadish, may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual." FED. R. CIV. P. 4(h)(1)(A). Rule 4(e), in turn, permits service to be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." FED. R. CIV. P. 4(e)(1).

Here, OYO purportedly served Jagadish, an Oregon Corporation, in accordance with Oregon law. Doc. 32-1, Aff., 2. Oregon Rule of Civil Procedure 7 sets forth the requirements for service of process. At the time of OYO's attempted service,[1] it provided:

---

[1] Oregon Rule of Civil Procedure 7 has since been amended; the Amendment went into effect in 2024. Because OYO purportedly served Jagadish in 2023, Doc. 32-1, the Court refers to the unamended text of the Rule.

D(3)(b) **Corporations including, but not limited to, professional corporations and cooperatives.** Upon a domestic or foreign corporation:

D(3)(b)(i) **Primary service method.** By personal service or office service upon a registered agent, officer, or director of the corporation; or by personal service upon any clerk on duty in the office of a registered agent.

D(3)(b)(ii) **Alternatives.** If a registered agent, officer, or director cannot be found in the county where the action is filed, true copies of the summons and the complaint may be served:

. . .

D(3)(b)(ii)(D) upon the Secretary of State in the manner provided in ORS 60.121 or 60.731.

OR. R. CIV. P. 7D(3)(b) (bold in original). Here, OYO claims it served Jagadish under the alternative listed above—service on the Oregon Secretary of State. Doc. 32-1, Aff., 2. However, "to invoke any of the alternative methods, a plaintiff must first show that a registered agent, officer, or director could not be found within the county the court is located in." *Rosado v. Roman*, No. 16-CV-784-SI, 2017 WL 3473177, at *4 (D. Or. Aug. 11, 2017). OYO has made no showing in its affidavit of service that Jagadish's officers or directors cannot be found in the "county where the action is filed" and thus, it is unclear whether service on the Oregon Secretary of State was authorized in this instance. *See Hensley v. Interstate Meat Distribution, Inc.*, No. 3:19-CV-0533-YY, 2020 WL 1677658, at *3 (D. Or. Jan. 10, 2020), *report and recommendation adopted*, No. 3:19-CV-533-YY, 2020 WL 1674350 (D. Or. Apr. 6, 2020).

As OYO has not adequately shown that Jagadish has been served in accordance with Oregon law—and by extension Rule 4(h)—the Court **DENIES** the Motion for Default Judgment as to the two claims asserted against Jagadish.

2.   Vishnu

OYO also moves for default judgment on the two breach of contract claims it asserts against Vishnu. Doc. 36, Mot. Br., 12–15. However, the Court similarly declines to enter default judgment on either of these two claims because OYO's Proof of Service on Vishnu is defective. *See Lindsey*,

161 F.3d at 893. OYO filed its Proof of Service on Vishnu on August 17, 2023; the Proof of Service indicates that service was made on Vishnu's registered agent in Montana. *See* Doc. 23, Aff. of Service, 1. However, the Proof of Service does not provide the date on which Vishnu was purportedly served. *See id.* Federal, Texas, and Montana law uniformly require that the proof of service set forth the date on which service was made. WRIGHT & MILLER, 4B FED. PRAC. & PROC. CIV. § 1130 (4th ed.) ("[The proof of service] should set out the date of service, the manner in which it was made, the place at which it was made, and identify any other papers that were served with the summons and complaint."); *Williams v. Waste Mgmt., Inc.*, No. 3:16-CV-2943-L-BN, 2017 WL 4570717, at *2 (N.D. Tex. Sept. 7, 2017) (Horan, M.J.), *report and recommendation adopted*, No. 3:16-CV-2943-L, 2017 WL 4548474 (N.D. Tex. Oct. 12, 2017) (Lindsay, J.) ("Texas law requires that particular information be included in the return of service, including the address served and the date of service or attempted service . . . ." (citing TEX. R. CIV. P. 107(b)); MONT. R. CIV. P. 4(r)(4) ("The required affidavit of service must state the time, date, place, and manner of service."). Moreover, the Proof of Service, which again was filed in 2023, is dated "8-3-2024." Doc. 23, Aff. of Service, 1. As the only proof of service on file for Vishnu (a) fails to indicate the date service was effectuated and (b) is dated nearly a year in the future, the Court **DENIES** the Motion for Default Judgment as to the two claims asserted against Jagadish.

3.    <u>Shivaji</u>

As with the other Hotel Defendants, OYO also asserts two contract claims against Shivaji. Doc. 1, Compl., ¶¶ 69–74, 85–90. Specifically, OYO claims that Shivaji breached (1) the Marketing Agreement and (2) the Forbearance Agreement. *See id.* The Court concludes that OYO is not entitled to default judgment on its claim for breach of the Marketing Agreement. However,

OYO has shown it is entitled to default judgment against Shivaji for breach of the Forbearance Agreement.

> i.    *Marketing agreement*

The Court may not enter default judgment on OYO's claim against Shivaji for breach of the Marketing Agreement because OYO has not discharged its burden of establishing the Court possesses personal jurisdiction over that claim.

"[A] judgment entered without personal jurisdiction is void." *Williams v. Licari*, 692 F. Supp. 3d 647, 656 (E.D. Tex. 2023) (citations omitted). "A district court therefore has the duty to ensure that it has personal jurisdiction before entering a default judgment." *Id.* There are two types of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017). In this case, however, OYO has not pleaded that Shivaji is subject to general personal jurisdiction in Texas. *See* Doc. 1, Compl., ¶ 9–10. Thus, the only issue is whether Shivaji is subject to specific personal jurisdiction in Texas with respect to OYO's claim for breach of the Marketing Agreement. *See Bristol-Myers Squibb*, 137 S. Ct. at 1780. The Fifth Circuit employs a three-step analysis to determine whether a district court may properly exercise specific jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*E. Concrete Materials, Inc.*, 948 F.3d at 296 (citing *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014)). The plaintiff bears the burden as to the first two steps. *Id.*

Here, OYO has not discharged its burden of establishing this Court's personal jurisdiction over Shivaji with respect its claim for breach of the Marketing Agreement. *See McFadin v. Gerber*,

587 F.3d 753, 759 (5th Cir. 2009) ("[S]pecific personal jurisdiction is a claim-specific inquiry."). OYO alleges that the Court possesses personal jurisdiction over Shivaji because Shivaji "consent[ed] to the exclusive jurisdiction of the United States District Court for the Northern District of Texas for the purpose of bringing any litigation, actions, or proceedings in any manner relating or arising out of this Agreement or any of the Loan Agreements." Doc. 1, Compl., ¶ 9. However, this language appears only in the Forbearance Agreement, not the Marketing Agreements, Doc. 37, App'x, 137, and is by its terms limited to claims related to "this [Forbearance] Agreement or any of the Loan Agreements." Doc. 1, Compl., ¶ 9. While this provision may be sufficient to establish personal jurisdiction over Shivaji with respect to OYO's claim for breach of the Forbearance Agreement, OYO must independently establish that this Court possesses personal jurisdiction over Shivaji with respect to its claim for breach of the Marketing Agreement. *See McFadin*, 587 F.3d at 759. It has not done so.

Shivaji is a Washington limited liability company with its principal place of business in Washington, and its Marketing Agreement concerned the management of property in Washington. Doc. 1, Compl., ¶¶ 6, 14. Further, the Shivaji Marketing Agreement contained a "Dispute Resolution" provision, which states:

> The laws of Netherlands shall govern the provisions of this Agreement, its performance and any dispute arising out of it. Any dispute arising out of or in connection with this Agreement shall be governed in accordance with the laws of Netherlands and the local courts of Amsterdam shall have jurisdiction to adjudicate the matter.

Doc. 37, App'x, 10, 12. The only connection between Shivaji and the forum the Court can glean from the pleadings is that Shivaji contracted with a forum resident, OYO. See Doc. 1, Compl., ¶¶ 1, 14. But merely contracting with a forum resident is not sufficient to support a finding of personal jurisdiction. *See VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 672 (N.D. Tex.

2020) (Starr, J.) ("The Fifth Circuit says that it is well established that merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." (citations omitted)). As OYO has not shown that the Court possesses personal jurisdiction over its claim for breach of the Marketing Agreement against Shivaji, the Court **DENIES** OYO's Motion for Default Judgment as to that claim.

ii.    *Forbearance agreement*

While OYO is not entitled to default judgment against Shivaji for breach of the Marketing Agreement, it has made a sufficient showing with respect to the Forbearance Agreement. Specifically, OYO has shown that default judgment is procedurally warranted and that there is a sufficient basis in the pleading to support judgment on its claim against Shivaji for breach of the Forbearance Agreement. *See Griffin*, 2023 WL 4303649, at *2 (E.D. Tex. June 30, 2023).

a.    Entry of default judgment is procedurally warranted

The Court finds that default judgment on OYO's claim for breach of the Forbearance Agreement against Shivaji is procedurally warranted.

First, there is no dispute of material fact. By defaulting, Shivaji "admits the plaintiff's well pleaded allegations of fact." *Nishimatsu*, 515 F.2d at 1206. As such, there is no dispute with respect to the factual allegations in OYO's Complaint.

Second, there has been prejudice to OYO. Shivaji's "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing [Plaintiffs'] interests." *Ins. Co. of the W. v. H & G Contractors, Inc.*, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011) (citing *Lindsey*, 161 F.3d at 893).

Third, the grounds for default are clearly established. *See Lindsey*, 161 F.3d at 893. Unlike its service on Jagadish, OYO has served Shivaji in accordance with Federal Rule of Civil Procedure

4. *See* Doc. 17, Aff. of Service. Rule 4(h)(1)(B) authorizes service "by delivering a copy of the summons and of the complaint to . . . any . . . agent authorized . . . by law to receive service of process . . . ." FED. R. CIV. P. 4(h)(1)(B). "Although Rule 4(h) explicitly refers only to corporations, partnerships, and associations, several judges of this court have held that it applies with equal force to limited liability companies." *Fuller v. CIG Fin., LLC*, No. 3:22-CV-1289-D, 2022 WL 4227518, at *2 n.3 (N.D. Tex. Sept. 13, 2022) (Fitzwater, J). Here, the Proof of Service indicates that on July 31, 2023, OYO served Shivaji, a limited liability company, by delivering the summons and complaint to Shivaji's agent, Parmar, who is authorized by law to accept service of process on behalf of Shivaji. Doc. 17, Aff. of Service, 1. Accordingly, Shivaji has been properly served under Rule 4. Moreover, Shivaji has not answered or otherwise appeared in these proceedings since being served on July 31, 2023, and thus is in default. *See* FED. R. CIV. P. 12(a)(1)(A)(ii) (providing 21 days for a defendant to respond after service). Therefore, "[t]he grounds for default judgment are . . . clearly established because [Shivaji has] not participated in any part of the adversarial process—[it has] failed to respond to the summons, the complaint, the entry of default, or [OYO's] Motion for Default Judgment." *Griffin*, 2023 WL 4303649, at *3.

Fourth, there is no evidence before the Court indicating that Shivaji's silence is the result of a "good faith mistake or excusable neglect." *See Lindsey*, 161 F.3d at 893. As stated above, OYO properly served Shivaji. The summons executed on Shivaji unequivocally provided that "[w]ithin 21 days after service of this summons . . . you [i.e., Shivaji] must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure." Doc. 17, Aff. Service, 2. Shivaji failed to comply with the directive that was served upon it and has offered no explanation for this failure.

Fifth, a default judgment against Shivaji is not harsh. *See Joe Hand Promotions, Inc. v. 2 Tacos Bar & Grill, LLC*, 2017 WL 373478, at *2 (N.D. Tex. Jan. 26, 2017) (Lynn, C.J.) (reasoning that default judgment was not harsh when defendants "had over six months to respond to Plaintiff's Complaint, and over three months to respond to Plaintiff's Motion for Partial Default Judgment."). Shivaji has been aware of the allegations levied against it for over a year, but it has presumably elected not to respond to these allegations or otherwise defend itself.

Sixth, and finally, the Court is not aware of any facts that would give rise to good cause to set aside the default if challenged by Shivaji. *See Lindsey*, 161 F.3d at 893. Unlike the Marketing Agreement, the Forbearance Agreement contains a forum-selection clause in which Shivaji consented to the "exclusive jurisdiction of the United States District Court for the Northern District of Texas for the purpose of bringing any litigation, actions, or proceedings in any manner relating or arising out of this [Forbearance] Agreement." Doc. 1, Compl., ¶ 9. Accordingly, it appears that the Court possesses personal jurisdiction over Shivaji with respect to this claim. *See Bar Grp., LLC v. Bus. Intel. Advisors, Inc.*, 215 F. Supp. 3d 524, 538 (S.D. Tex. 2017) ("Personal jurisdiction can be waived by an enforceable forum selection clause in which the parties consent to personal jurisdiction in a specified forum.").

Thus, OYO has met the procedural requirements for default judgment on its claim for breach of the Forbearance Agreement against Shivaji.

### b.     There is a sufficient basis for judgment in the pleadings

In light of the entry of default, Shivaji is deemed to have admitted the well-pleaded allegations in OYO's Complaint. *See Nishimatsu*, 515 F.2d at 1206. However, Shivaji "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *See id.* Thus, the Court must review the pleadings to determine whether they provide a sufficient basis for OYO's claim for

relief. *See id.* In conducting this analysis, the Fifth Circuit draws "meaning from the case law on Rule 8," requiring "a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). "The purpose of this requirement is to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (internal quotations omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Here, OYO seeks damages for Shivaji's breach of the Forbearance Agreement. Doc. 1, Compl., ¶¶ 85–90. To prevail on its breach-of-contract claim, OYO must show "(1) the existence of a valid contract, (2) performance or tendered performance by [OYO], (3) breach of the contract by [Shivaji], and (4) damages sustained by [OYO] as a result of the breach." *See Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

After reviewing the Complaint, the Court finds that OYO has sufficiently alleged that Shivaji breached the Forbearance Agreement. First, OYO alleges that the Forbearance Agreement constitutes a valid contract between OYO and Shivaji. *See* Doc. 1, Compl., ¶¶ 86–87. Under the Forbearance Agreement, OYO agreed to forbear enforcement of its rights against Parmar under the Loan Agreements and to help Parmar obtain a federal loan; in return, Shivaji agreed to make monthly payments to OYO. *Id.* ¶ 87. This is sufficient to show the existence of a valid contract supported by consideration. *See First Com. Bank v. Palmer*, 226 S.W.3d 396, 398 (Tex. 2007). Second, OYO has pleaded that it fully performed its obligations under the Forbearance Agreement. *See* Doc. 1, Compl., ¶ 88. Third, OYO pleaded that Shivaji breached the Forbearance Agreement by failing to make the required monthly payments. *Id.* ¶ 89; *see NLM Cap. Partners, L.P. v. Mobicom Corp.*, No. 3:08-CV-2033-P, 2009 WL 10677377, at *3 (N.D. Tex. Sept. 22, 2009) (Solis, J.). Finally, OYO has sufficiently pleaded that it was damaged as a result of Shivaji's breach. Doc. 1,

Compl., ¶ 90. Therefore, the Court **GRANTS** OYO's Motion for Default Judgment on its claim against Shivaji for breach of the Forbearance Agreement.

4.    Prem Creswell

OYO similarly claims that Prem Creswell breached (1) the Marketing Agreement and (2) the Forbearance Agreement. Doc. 1, Compl., ¶¶ 63–68, 85–90. The Court concludes that while the entry of default is procedurally warranted for both claims, the pleadings only support a finding that Prem Creswell breached the Forbearance Agreement, not the Marketing Agreement. *See Griffin*, 2023 WL 4303649, at *3.

i.    *Entry of default is procedurally warranted as to both claims*

OYO has shown that the entry of default is procedurally warranted as to both of its breach of contract claims against Prem Creswell.

First, there is no dispute of material fact because, by defaulting, Prem Creswell "admits the plaintiff's well pleaded allegations of fact." *Nishimatsu*, 515 F.2d at 1206. Second, there has been prejudice to OYO because Prem Creswell's "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing [Plaintiffs'] interests." *Ins. Co. of the W.*, 2011 WL 4738197, at *3 (citing *Lindsey*, 161 F.3d at 893). Third, the grounds for default judgment are clearly established because Prem Creswell, a limited liability company, was properly served on July 31, 2023, when the summons and complaint were delivered to its registered agent for service of process—Parmar—and because Prem Creswell has not taken any action in this case. *See* Doc. 18, Aff. Service; *Griffin*, 2023 WL 4303649, at *3. Fourth, there is no evidence before the Court indicating that Prem Creswell's silence is the result of a "good faith mistake or excusable neglect." *See Lindsey*, 161 F.3d at 893. Fifth, a default judgment against Prem Creswell is not harsh given

that it has been afforded over a year to appear in this case yet has not done so. *See Joe Hand Promotions*, 2017 WL 373478, at *2. Sixth, and finally, the Court is not aware of any facts that would give rise to good cause to set aside the default if challenged by Prem Creswell. *See Lindsey*, 161 F.3d at 893. Unlike OYO's claim against Shivaji for breach of the Marketing Agreement, it appears that the Court possesses personal jurisdiction over the same claim asserted against Prem Creswell because Prem Creswell's Marketing Agreement contains a "Governing Law" provision which states that "[a]ny dispute arising out of or in connection with this Agreement shall be governed in accordance with the laws of the State of Texas and the local courts of Dallas County, Texas shall have jurisdiction to adjudicate the matter." Doc. 37, App'x, 79. As Prem Creswell agreed to adjudicate any disputes relating to the Marketing Agreement in Texas, it appears that the Court possesses personal jurisdiction over Prem Creswell with respect to that claim. *See Bar Grp.*, 215 F. Supp. 3d at 538. Similarly, because Prem Creswell allegedly signed the same Forbearance Agreement as Shivaji, Prem Creswell also consented to the "exclusive jurisdiction of the United States District Court for the Northern District of Texas for the purpose of bringing any litigation, actions, or proceedings in any manner relating or arising out of this [Forbearance] Agreement." Doc. 1, Compl., ¶ 9. Thus, the Court possesses personal jurisdiction over Prem Creswell with respect to the claim for breach of the Forbearance Agreement as well. *See Bar Grp.*, 215 F. Supp. 3d at 538.

In sum, OYO has met the procedural requirements for default judgment on its claims against Prem Creswell.

ii.   *There is only a sufficient basis in pleadings to support a judgment on the claim for breach of the forbearance agreement*

Although the entry of default judgment against Prem Creswell is procedurally warranted, OYO must also establish that there is a sufficient basis in the pleadings to support an entry of default judgment. *See Griffin*, 2023 WL 4303649, at *3; *Wooten*, 788 F.3d at 498. The Court concludes that OYO has not adequately pleaded that Prem Creswell breached the Marketing Agreement. But OYO's allegations in support of its claim for breach of the Forbearance Agreement are sufficient.

a.   Marketing agreement

The pleadings do not support OYO's claim against Prem Creswell for breach of the Marketing Agreement because OYO has not alleged facts sufficient to show that Prem Creswell committed any breach of that Agreement. *See Mays*, 203 S.W.3d at 575 (listing breach by defendant as a necessary element of a breach of contract claim); *see also Wooten*, 788 F.3d at 498. OYO claims that Prem Creswell breached the Marketing Agreements by failing "to pay OYO . . . the outstanding Termination Fee." Doc. 1, Compl., ¶ 67. However, according to the allegations in the Complaint, OYO was only entitled to a Termination Free if OYO terminated the Marketing Agreement *after* Prem Creswell's prior breach.  *Id.* ¶ 21. ("[T]he [Marketing] Agreement[] provided that 'In the event . . . termination is made . . . *by OYO in case of breach  of this Agreement* by [Prem Creswell], [Prem Creswell] shall pay OYO an amount that is equal to 1.5 times the unamortized portion of the Capital Improvement Investment." (emphasis added)). Here, OYO has not pleaded that Prem Creswell was in breach at the time OYO terminated the Marketing Agreement. While OYO pleads that it "terminated the Prem Creswell Agreement with cause," it does not explain what the "cause" for termination was or provide any non-conclusory allegations

-16-

suggesting that Prem Creswell breached the Marketing Agreement. *See id.* ¶¶ 27, 67. Without such allegations, the Court cannot ascertain whether Prem Creswell was in breach prior to OYO's termination such that it was required to pay the Termination Fee. *See id.* ¶ 21. And if Prem Creswell was not required to pay the Termination Fee, then it necessarily could not have breached the Marketing Agreement by failing to pay the same. *See id.*; *Mays*, 203 S.W.3d at 575. Given that OYO's claim against Prem Creswell for breach of the Marketing Agreement is solely based on Prem Creswell's alleged failure to pay the Termination Fee, and because the pleadings do not plausibly support the inference that Prem Creswell was required to pay a Termination Fee, the Court **DENIES** OYO's Motion for Default Judgment as to that claim.

b.      Forbearance agreement

OYO, however, has sufficiently pleaded that Prem Creswell breached the Forbearance Agreement. OYO alleges that Prem Creswell was a party to the same Forbearance Agreement as Shivaji. *See* Doc. 1, Compl., ¶¶ 85–90. The Court has already concluded that the Forbearance Agreement constituted a valid contract, and that OYO performed its obligations under the same. *See supra* III.A.3.ii.b. And under the Forbearance Agreement, Prem Creswell—like Shivaji—allegedly agreed to make monthly payments to OYO but apparently failed to do so. Doc. 1, Compl., ¶¶ 87, 89. Moreover, OYO alleged that it was damaged as a result of Prem Creswell's breach of the Forbearance Agreement. *Id.* ¶ 90. Accordingly, the Court finds that there is a sufficient basis in the pleadings to warrant default judgment against Prem Creswell for breach of the Forbearance Agreement. *See Mays*, 203 S.W.3d at 575; *Wooten*, 788 F.3d at 498; *see also supra* III.A.3.ii.b. As such, the Court **GRANTS** OYO's Motion for Default Judgment as to that claim.

<u>5.</u>     <u>Mahesh</u>

OYO brings the same two breach of contract claims against Mahesh as it does against the other Hotel Defendants. Doc. 1, Compl., ¶¶ 51–56, 85–90. The Court concludes that OYO has shown the entry of default judgment is procedurally warranted as to both claims and that OYO has pleaded sufficient facts to support a finding that Mahesh breached both agreements. *See Griffin*, 2023 WL 4303649, at *3.

i.     *Entry of default judgment is procedurally warranted*

The entry of default judgment on the two claims asserted against Mahesh is procedurally warranted for the same reasons that the entry of default judgment is procedurally warranted as to the claims asserted against Prem Creswell. *See supra* III.A.4.i. Mahesh was properly served on July 31, 2023, has failed to answer or otherwise appear since that time, and is subject personal jurisdiction on both claims. *See* Doc. 16, Aff. of Service; Doc. 37, App'x, 42, 44, 137; *see also* FED. R. CIV. P. 4(h), 12(a); *Bar Grp.*, 215 F. Supp. 3d at 538. The remaining *Lindsey* factors do not militate against the entry of default judgment. *See* 161 F.3d at 893. Thus, OYO has met the procedural requirements for default judgment on its claims against Mahesh.

ii.     *There is a sufficient basis in the pleadings to support a judgment on both claims*

In addition, OYO has sufficiently alleged that Mahesh has breached both the Marketing Agreement and the Forbearance Agreement. *See Wooten*, 788 F.3d at 498.

a.     Marketing agreement

OYO's first claim against Mahesh is for breach of the Marketing Agreement. Doc. 1, Compl., ¶¶ 51–56. To prevail on that claim, OYO must plead that (1) the Marketing Agreement is a valid contract, (2) OYO performed its obligations under the Marketing Agreement, (3) Mahesh

breached the Marketing Agreement, and (4) OYO was damaged as a result of Mahesh's breach. *See Mays*, 203 S.W.3d at 575.

Here, OYO's pleadings are sufficient. First, OYO pleaded that Mahesh's Marketing Agreement was a valid contract. Doc. 1, Compl., ¶ 52. Under the Mahesh Marketing Agreement, OYO agreed to provide Mahesh with an up-front capital investment. *Id.* ¶ 53. In return, Mahesh was required to make certain improvements to its property within forty-five days of the effective date of the Marketing Agreement. *See id.* ¶¶ 20, 53. While either party could terminate the Mahesh Marketing Agreement, in the event OYO terminated after a breach of the Marketing Agreement by Mahesh, Mahesh would be required to pay OYO a Termination Fee. *Id.* ¶ 21. Second, OYO alleged that it performed its obligations under the Mahesh Marketing Agreement by providing the up-front capital to Mahesh. *Id.* ¶ 54. Third, OYO has pleaded that Mahesh breached the Marketing Agreement by failing to pay the Termination Fee. *Id.* ¶ 55. OYO alleged that it terminated Mahesh's Marketing Agreement after Mahesh failed to make the required improvements to its property in a timely manner. *Id.* ¶¶ 25–26, 28. Because Mahesh was in breach at the time of OYO's termination, Mahesh owed OYO a Termination Fee under the Marketing Agreement. *See id.* ¶ 21, 28, 55. OYO claims that Mahesh failed to tender the Termination Fee as required and thus breached. *Id.* ¶ 55. Fourth, OYO has adequately pleaded that it was damaged as a result of Mahesh's breach. *Id.* ¶ 56. Thus, the pleadings are sufficient to support judgment on OYO's claim against Mahesh for breach of the Marketing Agreement. *See Mays*, 203 S.W.3d at 575. As such, the Court **GRANTS** OYO's Motion for Default Judgment on its claim for breach of the Marketing Agreement against Mahesh.

b.      Forbearance agreement

The Complaint also contains facts sufficient to establish Mahesh's breach of the Forbearance Agreement. OYO alleges that Mahesh was party to the same Forbearance Agreement as Shivaji and Prem Creswell. Doc. 1, Compl., ¶ 86. It further claims that Mahesh's obligations under the Forbearance Agreement were the same as Shivaji's and Prem Creswell's and that like Shivaji and Prem Creswell, Mahesh breached the Forbearance Agreement by failing to make the required payments under that Agreement. *Id.* ¶ 87. Finally, OYO alleges that it was damaged as a result of Mahesh's breach of the Forbearance Agreement. *Id.* ¶ 90. The Court finds these allegations sufficient to support a default judgment against Mahesh for breach of the Forbearance Agreement. *See Mays*, 203 S.W.3d at 575. As such, the Court **GRANTS** OYO's Motion for Default Judgment on its claim against Mahesh for breach of the Forbearance Agreement.

6.      Parmar

Lastly, OYO brings three breach of contract claims against Parmar. *See* Doc. 1, Compl., ¶¶ 75–90. Specifically, OYO alleges that Parmar breached the two Loan Agreements, *id.* ¶¶ 75–84, and the Forbearance Agreement, *id.* ¶¶ 85–90. The Court concludes that OYO is entitled to default judgment on each claim asserted against Parmar.

i.      *Entry of default judgment is procedurally warranted*

Having independently reviewed OYO's request for default judgment on its three claims against Parmar in light of the *Lindsey* factors, the Court concludes that the entry of default judgment against Parmar is procedurally warranted. *See* 161 F.3d at 893; *see also* Doc. 15, Aff. of Service; Doc. 37, App'x, 130–31, 137.

      *ii.*     *There is a sufficient basis in the pleadings to support default judgment on all three claims*

OYO claims that Parmar breached the two Loan Agreements—the secured promissory note and the guaranty of the Hotel Defendants' obligations under their respective Marketing Agreements—as well as the Forbearance Agreement. *See* Doc. 1, Compl., ¶¶ 75–90. The Court examines the sufficiency of the pleadings in support of each claim in turn. *See Wooten*, 788 F.3d at 498. The Court considers the allegations pertaining to OYO's claim for breach of the two Loan Agreements first.

      *a.*     Loan agreements

OYO has sufficiently alleged that Parmar breached the Loan Agreements. As relevant to the present Order, the Loan Agreements consist of (1) a secured promissory note executed by Parmar in favor of OYO, and (2) a guaranty of the Hotel Defendants' obligations under their respective Marketing Agreements. *See* Doc. 1, Compl., ¶ 76.[2] "To state a claim for breach of contract in the promissory note context, a plaintiff must establish: (1) the existence of the note in question; (2) that the party sued signed the note; (3) that the plaintiff is the owner or holder of the note; and (4) that a certain balance is due and owing on the note." *David H. Russell Fam. Ltd. P'ship, LLLP v. Dernick*, No. 4:17-CV-1230, 2018 WL 1604989, at *6 (S.D. Tex. Mar. 31, 2018). "To recover on a breach of guaranty claim, a plaintiff must establish (1) the existence and ownership of the guaranty contract; (2) the terms of the underlying contract by the holder; (3) the

---

[2] OYO also alleges that one of the Loan Agreement executed and breached by Parmar was a "Pledge Agreement" in which Parmar pledged certain collateral as security for his obligations under the Promissory Note. Doc. 1, Compl., ¶ 35.  While OYO claims that Parmar also breached the Pledge Agreement, *id*. ¶ 83, the Court understands Parmar's obligations under that Agreement to be subsumed within his obligations under the secured promissory note.

occurrence of the conditions upon which liability is based; and (4) the failure or refusal to perform the promise by the guarantor." *WC 1899 McKinney Ave., LLC v. STK Dallas, LLC*, 380 F. Supp. 3d 595, 604–05 (W.D. Tex. 2019).

The facts alleged in the Complaint are sufficient to support a judgment on OYO's claim for breach of the secured promissory note. First, OYO has alleged the existence of a promissory note. Doc. 1, Compl., ¶¶ 76–77. OYO claims that it loaned Parmar money, and in exchange, Parmar executed the secured promissory note. *See id*. Second, OYO alleged that Parmar—the party sued— signed the note. *Id*. ¶ 76; Doc. 37, App'x, 100. Third, OYO claims that it is the owner and holder of the secured promissory note. *See* Doc. 1, Compl., ¶ 33. Fourth, OYO pleaded that Parmar defaulted on the secured promissory note and that amounts due under the note remain outstanding. *Id*. ¶ 81. Accordingly, OYO has alleged facts sufficient to support a judgment on its claim against Parmar for breach of the secured promissory note. *See Dernick*, 2018 WL 1604989, at *6.

The Complaint also contains factual allegations sufficient to support entry of judgment on OYO's claim for breach of the guaranty. First, OYO has alleged the existence of a guaranty contract. Doc. 1, Compl., ¶¶ 76–77. OYO claims that as a condition precedent to its issuance of the loan to Parmar, Parmar agreed to guaranty the Hotel obligations under their respective Marketing Agreements. *Id*. ¶ 34 ("Under the terms of the Guaranty, Mr. Parmar unconditionally guaranteed as a primary obligor, and not merely as surety, all obligations and liabilities of each Hotel [Defendant] under their respective Marketing . . . Agreements."). Second, OYO pleaded the terms of the underlying contract—here, the Marketing Agreements—that Parmar guarantied. *See id*. ¶¶ 19–22. Third, OYO has alleged that Hotel Defendants had defaulted on their obligations under the Marketing Agreements, thus triggering Parmar's duties under the guaranty. *See id*. ¶¶

-22-

27–32, 34. Fourth, OYO pleaded that Parmar breached the guaranty by failing pay OYO the full amounts owed by the Hotel Defendants under their respective Marketing Agreements. *Id.* ¶ 82. As such, the pleadings are sufficient to support the entry of default judgment on OYO's claim against Parmar for breach of the guaranty. *See WC 1899 McKinney Ave.*, 380 F. Supp. 3d at 604–05.

For these reasons, the Court **GRANTS** OYO's Motion for Default Judgment on its claim for breach of the two Loan Agreements by Parmar.

b.      Forbearance agreement

Finally, OYO claims that Parmar breached the Forbearance Agreement. Doc. 1, Compl., ¶¶ 85–90. As explained, OYO sufficiently alleged that the Forbearance Agreement is a valid contract. *See supra* III.A.3.ii.b; *see also* Doc., 1, Compl., ¶ 86. Under the Forbearance Agreement, OYO agreed to forebear enforcement of its rights under the Loan Agreements and to help Parmar obtain a federal loan. Doc. 1, Compl., ¶ 87. In return, Parmar agreed to make monthly payments in satisfaction of his debts under the Loan Agreements and to make a $400,000 payment to OYO upon funding of the federal loan. *Id.* OYO alleges that it performed its obligations under the Forbearance Agreement by not enforcing its rights against Parmar under the Loan Agreements and by helping Parmar obtain a federal loan. *Id.* ¶ 88. However, Parmar allegedly failed to perform his obligations under the Forbearance Agreement. *Id.* ¶ 89. Specifically, OYO avers that Parmar failed to make monthly payments to OYO in satisfaction of his debts under the Loan Agreements or make the $400,000 payment to OYO after the funding of the federal loan. *Id.* OYO lastly pleads that it was damaged as a result of Parmar's breach. *Id.* ¶ 90. The Court concludes that these allegations support the entry of judgment on OYO's claim for breach of the Forbearance

Agreement by Parmar. *See Mays*, 203 S.W.3d at 575. The Court thus **GRANTS** OYO's Motion for Default Judgment as to that claim.

***

In sum, OYO brought two breach of contract claims against each of the Hotel Defendants—one for breach of their respective Marketing Agreements and one for breach of the Forbearance Agreement. OYO also brought three breach of contract claims against Parmar—the first two were for breach of the Loan Agreements and the third was for breach of the Forbearance Agreement. OYO moved for default judgment on each of these claims. The Court **DENIES** the Motion as to the following claims: (1) breach of the Marketing Agreement by Jagadish; (2) breach of the Forbearance Agreement by Jagadish; (3) breach of the Marketing Agreement by Vishnu; (4) breach of the Forbearance Agreement by Vishnu; (5) breach of the Marketing Agreement by Shivaji; and (6) breach of the Marketing Agreement by Prem Creswell. The Court **GRANTS** the Motion as to the following claims: (1) breach of the Forbearance Agreement by Shivaji; (2) breach of the Forbearance Agreement by Prem Creswell; (3) breach of the Marketing Agreement by Mahesh; (4) breach of the Forbearance Agreement by Mahesh; (5) breach of the secured promissory note by Parmar; (6) breach of the guaranty by Parmar; and (7) breach of the Forbearance Agreement by Parmar.

B.      *The Court Cannot Grant the Relief Requested at this Time*

"After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages." *U.S. for Use of M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Normally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, a hearing is unnecessary if the damages can

be determined with mathematical calculation by referencing the pleadings and supporting documents. *James v. Frame*, 6 F.3d 307, 311 (5th Cir. 1993).

In this case, the Court does not think that it can calculate damages with certainty. OYO "seeks an aggregate amount of $1,454,445.00 in monetary damages, which . . . consists of: (i) the unpaid principal balance of $ 1,136,317.00; (ii) unpaid interest accrued in the amount of $318,127.00." Doc. 36, Mot. Br., 16. The principal balance sought—i.e., the $1,136,317.00— apparently consists of amounts owed "by way of Defendants' default under the Forbearance Agreement." *Id.* The amounts owed under the Forbearance Agreement correspond in part to amounts owed by the Hotel Defendants under their respective Marketing Agreements. *See id.* But, as explained above, the pleadings are not sufficient to support an inference that Prem Creswell owed OYO any money under its Marketing Agreement. *See supra* III.A.4.ii.a. It is unclear from OYO's Motion for Default Judgment how much OYO would be entitled to under the Forbearance Agreement once amounts allegedly owed by Prem Creswell are properly deducted. Moreover, because OYO has not demonstrated that the entry of default judgment is procedurally warranted with respect to its claims against Jagadish, Shivaji, or Vishnu for breach of their respective Marketing Agreements, the Court does not consider the sufficiency of OYO's pleadings as to those claims. And because the Court cannot determine whether Jagadish, Shivaji, or Vishnu breached their Marketing Agreements, it necessarily cannot determine whether OYO is entitled to damages stemming from any such breach. For these reasons, the Court cannot grant OYO the relief it requests at this time. *See James*, 6 F.3d at 311.

IV.

CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** OYO's Motion for Default Judgment (Doc. 35). The Court **DENIES** the Motion as to the following claims: (1) breach of the Marketing Agreement by Jagadish; (2) breach of the Forbearance Agreement by Jagadish; (3) breach of the Marketing Agreement by Vishnu; (4) breach of the Forbearance Agreement by Vishnu; (5) breach of the Marketing Agreement by Shivaji; and (6) breach of the Marketing Agreement by Prem Creswell. The Court **GRANTS** the Motion as to the following claims: (1) breach of the Forbearance Agreement by Shivaji; (2) breach of the Forbearance Agreement by Prem Creswell; (3) breach of the Marketing Agreement by Mahesh; (4) breach of the Forbearance Agreement by Mahesh; (5) breach of the secured promissory note by Parmar; (6) breach of the guaranty by Parmar; and (7) breach of the Forbearance Agreement by Parmar. OYO is **ORDERED** to supplement its Motion with additional briefing and evidence setting forth the damages it is entitled to with respect to the seven claims for which Court has granted default judgment. OYO's supplemental materials are due **twenty-one (21) days** from the date of this Order.

SO ORDERED.

SIGNED: September 3, 2024.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE